UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

ANTHONY OLIVER,

    Plaintiff,

v.

JOINT LOGISTICS MANAGERS, INC.,

    Defendant.

Case No. 4:15-cv-04014-SLD-JEH

ORDER

Before the Court are a Motion for Summary Judgment, ECF No. 28, and a Motion for Hearing, ECF No. 29, by Defendant Joint Logistics Managers, Inc. ("JLMI") on Plaintiff Anthony Oliver's claim for race discrimination in employment and retaliatory discharge under 42 U.S.C. § 1981.

## BACKGROUND[1]

JLMI hired Anthony Oliver, an African-American man, as a semi-truck driver on July 2, 2012. Oliver's employment was governed by the Collective Bargaining Agreement ("CBA") entered into by JLMI and the International Brotherhood of Teamsters Local Union No. 371. The two bargaining units to which JLMI employees belong, identified as "seniority units" included 1) Motor Vehicle Repair Employees – Mechanic, Mechanic Helper, Battery Servicer and 2) Motor Vehicle Operation Employees – Truck Driver (T/T), truck driver (heavy), shipping/receiving clerk, tractor operator/vehicle cleaner. Seniority under the CBA accrues only within the specific seniority unit in which the employee works. CBA 7.1, Mot. Summ. J. Ex. B, ECF No. 28-3 at 40. At all relevant times, the CBA contained provisions by which employees subject to a

---

[1] Facts are taken from the parties' Undisputed Material Facts Sections. Mot. Summ. J., ECF No. 28; Am. Resistance, ECF No. 33-1. Disputed facts and those not included in the parties' undisputed fact sections are cited directly from the record.

reduction in force (identified in the CBA as a "reduced employee") could displace—or, colloquially, "bump"—less senior employees, or fill in an existing position within the same seniority unit.  CBA 7.3.  Bumping was only allowed when the reduced employee was deemed "qualified as determined by the company," and no reduced employee was entitled to bump an employee outside of his seniority unit.  *Id.*

Oliver's initial position was within the Motor Vehicle Operation Employees ("Transportation") unit.  On September 30, 2013, Oliver was laid off.  Oliver filed a grievance because he felt that JLMI did not provide the two weeks' notice of the layoff required by the CBA.  He lost this grievance in arbitration.  Oliver stated that he was chosen for the layoff in 2013, because he was "lowest as far as seniority."  Pl.'s Dep. Dep. 58:23–24, Mot. Summ. J. Ex. C, ECF No. 28-4.

On January 17, 2014, Tyler Farr, a white employee in the position of tractor operator/vehicle cleaner, was terminated.  Farr grieved the termination, but in the meantime, Oliver was recalled by JLMI to work in Farr's position—still in the Transportation Unit—beginning February 3, 2014.  While working in Farr's position, Oliver sustained an injury when a piece of machinery rolled over his ankle.  Rocky Vance, a white male, was hired as a temporary employee in April 2014, to replace Oliver while he was out due to his injury.

Oliver was released back to work in the same position on July 7, 2014, and he returned to work on July 9, 2014.  On July 8, 2014, JLMI, via project manager Scott Schneider, offered Vance a mechanic position that required five years of experience.  Oliver filed a grievance because the position was not publicly listed.  The grievance was upheld, and Schneider notified Vance that the offer was rescinded.  JLMI posted the position publicly on July 15, 2014, and both Oliver and Vance applied.  Neither employee had seniority for the position because both

2

were members of the Transportation Unit and the mechanic position was in the other seniority unit. The application required submission of a resume and a questionnaire administered by Schneider. Oliver had never been employed as a mechanic prior to applying for the position. The parties dispute whether Oliver's resume indicated that he had mechanic experience. On September 8, 2014, Schneider hired Vance to the position. JLMI informed Oliver around that time that he was not qualified for the position. Pl.'s Dep. 103:25–104:6. Schneider stated that in his deposition he was unable to verify that Oliver had five years of mechanic experience. Oliver filed a grievance in regard to Vance's hiring on September 10, 2014.

    At some point after Vance's promotion to mechanic, Oliver alleges that Vance called him a "thief" and a "f**king n***er" when he picked up a set of keys off of Vance's work station at the behest of his supervisor.

    After an arbitrator concluded in August 2014, that Farr was wrongly terminated, JLMI was ordered to reinstate him to his previous position. Farr bumped Oliver because Farr had seniority over him. The parties dispute whether it was necessary to bump Oliver: JLMI stated that it had "no choice" Def.'s UMF ¶ 15, because it needed to reduce staffing, *id.* at ¶ 20, while Oliver argues that the retirement of another employee in the unit left a position open that Oliver could have filled. Pl.'s UMF ¶ 15.

    Oliver filed a charge with the Equal Employment Opportunity Commission ("EEOC") on August 25, 2014, alleging discrimination and retaliation based on race, color, and disability. The charge included allegations that Vance was wrongly promoted over Oliver, that the test for the mechanic position was racially biased, and that he endured a hostile work environment; the charge included that Vance had "yelled" at Oliver but not that he had used racial insults. EEOC Charge, ECF No. 28-4 at 99.

Oliver was laid off from September 2014 until he received a recall notice in June 2015, to work temporary duty as a semi-truck driver while the regular driver was off on disability leave. Oliver physically returned to work in August 2015. He worked until he was laid off on September 29, 2015, when the regular driver returned from disability leave without advance notice to JLMI. In November 2015, Oliver was recalled to work as a battery servicer. As of Oliver's last filings with the Court, on May 18, 2016, he remained employed as a truck driver. Pl.'s UMF ¶ 30.

Two other temporary mechanics were hired after Vance at some point in fall 2014: Patrick Paige, a white male with eight or nine years of experience as a mechanic in the Marine Corps, and Medgar Harris, who is black and had at least some experience as a mechanic. Rocky Vance was terminated in January 2015, after violating company policy several times.

## DISCUSSION

### I.    Legal Standard on a Motion for Summary Judgment

At the summary judgment stage the court's function is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial[—that is, whether] there is sufficient evidence favoring the non-moving party for a jury to return a verdict" in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *see Patel v. Allstate Ins. Co.*, 105 F.3d 365, 370 (7th Cir. 1997). The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010) (citing *Anderson*, 477 U.S. at 255).

### II.   42 U.S.C. § 1981 Discrimination Claim

Oliver contends that JLMI discriminated against him on the basis of race when it chose to hire a white mechanic instead of him, and argues that JLMI engaged in "disparate treatment"

4

when it allowed white truck drivers without certain qualifications to stay on the job when Oliver was laid off. Am. Resistance 1–2; 15.

### a. Legal Standard For Discrimination Claims Arising Under 42 U.S.C. § 1981

Section 1981 "protects the right of all persons 'to make and enforce contracts' regardless of race," *Carter v. Chicago State Univ.*, 778 F.3d 651, 657 (7th Cir. 2015) (quoting 42 U.S.C. § 1981(a)). To prevail on a Section 1981 claim, the plaintiff must prove that he has been the victim of intentional discrimination, *Melendez v. Ill. Bell Tel. Co.*, 79 F.3d 661, 669 (7th Cir. 1996), and may utilize the Title VII's methods of proof. *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 403–04 (7th Cir. 2007). At the summary judgment phase, the plaintiff must either provide a sufficient basis for a reasonable factfinder to conclude that the evidence, as a whole, indicates that the plaintiff's race "caused the discharge or other adverse employment action," *Ortiz v. Werner Enter.*, 834 F.3d 760, 765 (7th Cir. 2016), or employ the burden shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973), *id.* at 766.

The Seventh Circuit has developed unique burden-shifting tests (detailed below) to fit the circumstances of various types of claims—whether based on failure to promote, layoff, or other adverse employment action. If the plaintiff is able to establish a prima facie case, thereby raising an inference of discrimination, the burden shifts to the employer to offer a non-discriminatory reason for the adverse employment action. *Everroad v. Scott Truck Systems, Inc.*, 604 F.3d 471, 477 (7th Cir. 2010). If the employer provides one, the burden shifts back to the plaintiff to show that the given reason is pretextual. *Id.*

### b. Oliver's Claim of Discrimination

#### i. Failure To Hire Oliver Into Mechanic Position

5

Oliver relies on the *McDonnell Douglas* burden-shifting framework to prove discrimination.[2] Oliver argues that he should have been placed in the mechanic position before Vance because he was both more senior and more qualified. Am. Resistance 14. Oliver further argues that after Vance was terminated for poor performance in January 2015, he should have been able to fill the resultant open mechanic position. *Id.* at 17.

To make out a prima facie case of discrimination for JLMI's failure to place him in the mechanic job, Oliver must show that "(1) [he] is a member of a protected class; (2) [he] is qualified for the position; (3) [he] was rejected for the position sought; and (4) the position was granted to a person outside the protected class who is similarly or less qualified." *Jordan v. City of Gary, Ind.*, 396 F.3d 825, 833 (7th Cir. 2005). The first and third prongs are not contested: Oliver is black, and was rejected from the mechanic position. The parties dispute prongs two and four: JLMI argues that Oliver was not hired because he was not qualified for the position, and therefore not more qualified than Vance, leaving him unable to make a prima facie case. Def.'s Mot. Summ. J. 18–19. Even if the Court could find Oliver has presented sufficient evidence that he was equal to or more qualified than Vance, Oliver has not presented any evidence to suggest that JLMI's reason for not hiring him was untrue. *See Keeton v. Morningstar*, 667 F.3d 877, 885 (7th Cir. 2012) (authorizing courts to skip over the initial burden shifting portion of the McDonnell Douglas test to focus on the lack of pretextual evidence).

---

[2] First, Oliver puts forth no legal argument of his own in his Resistance to JLMI's motion, so the Court assumes that he intends to adopt and respond to JLMI's use of the *McDonnell Douglas* framework. Second, Oliver puts forth that at some point, Rocky Vance accused Oliver of stealing and called him a "f**king n***er." Oliver Dep 138: 3–6. Pl.'s Ans. Interrog., ECF No. 28-4 at 83. Use of racial epithets can be compelling evidence of bias, but when comments are made by subordinates, like Vance, rather than by decisionmakers, like Schneider, they are not probative of the employer's discriminatory intent. *See Harris v. Warrick Cnty. Sheriff's Dep't.*, 666 F.3d 444, 448 (7th Cir. 2012). Oliver has not raised a "cat's paw" theory or a claim of hostile work environment, by which a failure of the supervisors to address racial harassment could constitute discrimination; even if he had, the Seventh Circuit holds that though the use of such a racially charged word in any context is deplorable, an isolated incident like the one Oliver describes would not sufficiently sustain a claim. *Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 271 (7th Cir. 2004).

Assuming Oliver has established a prima facie case, the burden shifts back to JLMI to offer a non-discriminatory explanation of its decision not to hire Oliver into the mechanic position. *Everroad*, 604 F.3d at 477. JLMI maintains that Oliver was not as qualified as Vance based on the information the two applicants provided through the application process. Mot. Summ. J. 18–19. The CBA's seniority provisions were not applicable to Vance or Oliver when they were considered for the mechanic position,[3] so under the applicable provisions of the agreement, hiring for the mechanic position centered on which of the two men was more qualified for the position. CBA 7.4(c). The mechanic position required five years' experience as a mechanic, in addition to the ability to speak English, the ability to lift forty pounds, an ASE certification or ability to obtain it, training in the use of SAMS-1-E (Standard Army Maintenance System), and the ability to obtain secret clearance if necessary. Schneider Dep. 57:19–58: 14, Mot. Summ. J. Ex. D, ECF No. 28-5.

When an employer relies on subjective reasons for not hiring an applicant, it meets its burden for showing the legitimacy of its decision when it can provide "reasonably specific facts that explain how it formed its opinion of the applicant." *U.S. E.E.O.C. v. Target Corp.*, 460 F.3d 946, 957 (7th Cir. 2006). Schneider pointed specifically to the lack of experience evidenced by Oliver's application materials. Schneider Dep. 85:5–16. A noticeable difference existed between Vance's resume, which listed considerable mechanic experience, and Oliver's, which did not. Oliver acknowledged that he had never applied for a job as a mechanic aside from the one in July 2014, and had only been "self-employed" as a mechanic. Pl.'s Dep. 42:19–25. He conceded that his resume did not reflect any experience as a mechanic other than less than a year

---

[3] Oliver suggests that JLMI's "fail[ure] to use the seniority system," Am. Resistance 15, by selecting Vance for the job constituted race discrimination, but this does not comport with the CBA hiring procedures: the CBA explains that seniority accrues only within one's own unit, and seniority only enters into the calculus when the applicant already has seniority "in the unit where the position exists." CBA 7.1(a); 7.4(c). The mechanic position was in the Motor Vehicle Repair Unit, not the Transportation Unit, where both Vance and Oliver worked.

of working as an "owner-operator." Pl.'s Dep 86:20–87:6. Otherwise, Oliver's resume contained very little evidence of mechanical ability (for instance, one line item stating that he could "repair minor vehicle operation problems." Oliver Resume, Am. Resistance Ex. 37, ECF No. 30-5). Vance's resume, meanwhile, clearly indicated mechanical experience at his past jobs dating back to at least 2010. Vance Resume, Mot. Summ. J. Ex. B, ECF No. 28-3 at 76.

Schneider's questionnaire contained twenty questions about mechanical work, including questions about how to maintain certain equipment, safety protocol, and how to handle various mechanical failures. *See* Pl.'s Questionnaire, ECF No. 28-4 at 78. Schneider testified that he considered Oliver's claim to having thirty years' experience[4] in his deliberations but said that based on the resume and questionnaire he could not "verify" Oliver's experience as a mechanic. Schneider Dep. 58:19–25. In the course of litigation, both Oliver and Howard Spoon, the former union president and business agent for JLMI, testified that Oliver had experience as a mechanic—Spoon testified to Oliver's skill at flipping cars, Spoon Dep. 22–23, Mot. Summ. J. Ex. B, ECF No. 28-3, and Oliver described experience repairing forklift trucks and semi-trucks like those operated by JLMI. Pl.'s Dep. 91–92; however, Oliver stated that he never apprised Schneider of his experience servicing his own semi-truck or doing other types of relevant work because "[y]our work shows for itself." Pl.'s Dep. 91:17–20.

Though Oliver presents considerable evidence that Vance later proved himself incompetent as a mechanic, that information does not implicate anything about the information available to Schneider at the only relevant time period: the time he made the hiring decision. *Target*, 460 F.3d at 960 (holding that only evidence of information available to the employer at the time it made its decision is relevant). Oliver may, in fact, be a competent mechanic, but the

---

[4] The information Oliver provided on Schneider's questionnaire included the statement "I can fix any car, truck, fork truck for over 30 yrs. You name it I can fix it." *See* Pl.'s Questionnaire, Mot. Summ. J. Ex. C, ECF No. 28-4 at 78.

8

record does not show that he fully communicated his qualifications to JLMI. *See Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1181 (7th Cir. 2002) (holding that "a plaintiff's own opinions about her work performance or qualifications do not sufficiently cast doubt on the legitimacy of her employer's proffered reasons for its employment actions."). JLMI has presented a legitimate business reason—Oliver's ostensible lack of experience—for its choice not to hire him into the mechanic position.

Since JLMI has provided a legitimate business reason for its decision, the burden shifts back to Oliver to show that the stated reason is pretextual. Oliver "cannot raise a genuine issue if the evidence shows only that the employer made a wrong assessment of the applicant." *Target*, 460 F.3d at 960. He "must present evidence that supports an inference that the employer was intentionally dishonest when it gave its nondiscriminatory reason for rejecting the applicant." *Id*. Oliver has failed to present any evidence that JLMI's legitimate business reason was pretext for discrimination.[5]

Oliver also claims he should have been promoted to other mechanic positions within the company. Am. Resistance 17. On September 30, 2014, JLMI listed two temporary mechanic positions with the same requirements as the permanent position to which Oliver had already applied. Oliver did not apply to the positions because he was not aware of them, but argues that the company should have notified him of their existence. Yet JLMI had already concluded and notified Oliver that he was unqualified to serve as a mechanic, and he took no steps to inform the company otherwise. JLMI then changed one of the temporary positions into a permanent

---

[5] At one point, Oliver linked his perceived poor treatment to his injury on the job in February 2014. Pl.'s Dep. 159:7–10 ("Ever since I came back from my torn Achilles I have been demoted in pay. I have been written up. I have been told what I ain't been doin', what I have been doin'."). Oliver claims to have been "written up" for various mistakes he made while working, Pl.'s Dep. 158:4–11; however, no evidence of disciplinary infractions has been presented to the Court by Oliver or any other witness. Schneider Dep. 72:7–9 (Q: "In fact, he has never been disciplined for his work performance, has he?" A: "I do not believe so. He's a good employee.") Unlike his erstwhile comparator, Vance, who was fired after repeated failure to follow workplace policy, Oliver remains employed by JLMI.

position by transitioning Medgar Harris, a black mechanic, from temporary to full time. Oliver cannot use Harris as a comparator—Harris is black, and Oliver may not make out a prima facie case of race discrimination by pointing to a person in his same protected class. *See Riley v. Elkhart Community Schools*, 829 F.3d 886, 892 (7th Cir. 2016).

### ii. Layoff from Truck Driver Positions

Oliver contends that JLMI discriminated against him when it laid him off from his truck driving position at various times between 2013 and 2015, despite the fact that he held certifications not held by white drivers who remained employed. Am. Resistance 15.[6]

In the case of a reduction in force ("RIF") involving layoffs, the plaintiff carries his prima facie burden when he can show, in addition to being (1) a member of a protected class and (2) qualified for the position, that he was (3) discharged and (4) that similarly situated employees not in the plaintiff's protected class were treated more favorably. *Bellaver v. Quanex Corp.*, 200 F.3d 485, 494 (7th Cir. 2000). There is no dispute that Oliver was laid off despite being qualified to work as a driver, and despite the fact that white employees stayed on the job. JLMI argues that all layoff and hiring was done in accordance with the CBA, that none of the comparators to whom Oliver points were similarly situated, and that, in any case, white employees were not systematically better treated than black employees. Mot. Summ. J. 15–16; 18.

In order to establish that another employee was similarly situated, the plaintiff must show that he and the comparator were alike "'in all material respects' so as 'to suggest that [the

---

[6] Oliver also named Rodney Paysen as a comparator because he alleged that Paysen made more money than he did in the same job as a tractor-trailer driver. Pl.'s Dep. 147:5. Oliver has not alleged or argued what type of adverse employment action he was subject to in comparison to Paysen: Paysen, a white male, was not only senior to Oliver, but Oliver's testimony also indicates that Paysen quit precisely because he was asked to pay back the money that he was overpaid. *Id*. at 147:21. There are no facts to support the assertion that Paysen was treated more favorably than Oliver.

plaintiff] was singled out for worse treatment.'" *Tyson v. Gannett Co.*, 538 F.3d 781, 783 (7th Cir. 2008) (quoting *Henry v. Jones*, 507 F.3d 558, 564 (7th Cir. 2007)).  When seniority status affects job assignment under a collective bargaining agreement, employees who have different seniority status are not similarly situated.  *Tyson*, 538 F.3d at 783 (citing *Filar v. Bd. of Educ. of City of Chicago*, 526 F.3d 1054, 1062 (7th Cir. 2008) ("To the extent that seniority is a simple proxy for something like the length of employment and is something that an employer must credit when making employment decisions, differences in seniority will tend to make two employees dissimilar for purposes of the plaintiff's prima facie case.")).

JLMI's adherence to a bona fide seniority system, by which a collective bargaining agreement made seniority the "determining factor in job assignment," disallows Oliver from claiming that employees who had seniority—here, DeRoo, Clark,[7] Paysen, and Gunner—were similarly situated.  *Tyson*, 538 F.3d at 783.  Section 7.3 of the CBA addresses the Layoff and Recall procedures that govern when JLMI chooses to reduce employees.  CBA 7.3.  At all relevant times, layoffs under the CBA were governed only by seniority; it was only after a reduced employee attempted to exercise his right to bump a less senior employee that the qualifications of the *reduced* employee—not the less senior employee he attempted to bump—became relevant.  *Id.*  (CBA 7.3(d) states that no reduced employee can bump a less senior employee "if the Company determines that the displacing employee is not qualified to perform the work required.")  Schneider concurred that the CBA did not allow JLMI to consider "skills or performance" as criteria for layoff; he understood the CBA only to allow for consideration of seniority in a layoff scenario.  Schneider Dep. 92:4–22.

---

[7] Clark is also black. He was misidentified in the Complaint as white. Compl. ¶ 13a.  Oliver argues elsewhere that Tim Clark was treated preferentially on the basis of his darker skin. The Court finds that since Clark was not similarly situated to plaintiff on the basis of seniority, it need not address the complex question of discrimination on the basis of color.

11

Because of the CBA's layoff provisions, Oliver would be similarly situated only to those employees who were of equal or lesser seniority. He presents no evidence of such a comparator. Oliver's stated belief that DeRoo and Clark "should have got laid off until they received their[] [certifications]," Pl.'s Dep 144:22-23, does not comport with the way the CBA functioned. Though Oliver alleges that neither DeRoo nor Clark had a Class A driver's license and a hazmat certification, and that Gunner lacked his hazmat certification, Oliver concedes that each of these employees had seniority over him. Pl.'s Dep. 145:4–5; 146:6–16. Oliver admitted that he never filed a grievance against DeRoo or Clark precisely because they had more seniority than he did. Pl.'s Dep. 144:24–145:5. Oliver has not successfully presented evidence from which a reasonable factfinder could infer racial discrimination on the basis of his layoff from the truck driver position.

Oliver also identified as an adverse employment action JLMI's failure to re-hire him from layoff when another truck driver retired in January 2014. Am. Resistance 16. A failure to hire claim requires a plaintiff to present evidence:

> that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

*McDonnell Douglas*, 411 U.S. at 802. [8]

JLMI argues that even if Oliver could establish a prima facie case, it made a legitimate business decision to cut the number of drivers. Mot. Summ. J. 21. Oliver alleges that neither he nor Spoon observed a change in the amount of work for truck drivers, Am. Resistance 17, but

---

[8] No official application is needed in cases where an employer fills a position through an informal discretionary selection process. All that's required is the employer's awareness of the employee's interest. *See Simple v. Walgreen Co.*, 511 F.3d 668, 670–71 (7th Cir. 2007).

12

even if that were true, JLMI still maintained full control of its staffing decisions.[9] At all relevant times, that position remained unfilled, and Oliver reported in his last filing with the Court, on June 1, 2016, that he was once again working as a truck driver at JLMI.  Pl.'s UMF ¶ 30.

It is uncontested that Oliver had less seniority than the other drivers who were retained by JLMI.  Even taken in the light most favorable to Oliver, the facts indicate that JLMI operated within the bounds of its bona fide seniority system in selecting Oliver for layoff, and in maintaining the staffing levels as management deemed fit.  Oliver has not presented sufficient evidence from which a reasonable juror could infer JLMI intended to discriminate when it failed to promote or recall Oliver or executed layoffs.

### III.   42 U.S.C. § 1981 Retaliation Claim

Oliver alleges that JLMI retaliated against him by not hiring him into one of the two temporary mechanic positions or the full-time mechanic position that became available after he filed a race discrimination claim with the EEOC on August 25, 2014. The two temporary mechanic positions that opened on September 30, 2014 were filled by Medgar Harris and Patrick Paige.  Harris filled the permanent mechanic position that opened after Vance's termination in January 2015.

#### a.   Legal Standard for Retaliation Claim Under 42 U.S.C. § 1981

In *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 445 (2008), the Supreme Court held that § 1981 authorizes a retaliation claim when action is taken against someone who has asserted his rights protected by § 1981.  "In the context of laws governing employment rights, 'unlawful retaliation occurs when an employer takes an adverse employment action against an employee

---

[9] Under the CBA, staffing decisions were within the control of the company, and Oliver had no standing to force JLMI to maintain a position.  Spoon Dep. 44:4–10 ("There's nothing in the collective bargaining agreement that directs any number of employees in any department has to be maintained. . . [T]he company would have the right to not call people back and run short . . . . That's part of management's rights.").

13

for opposing impermissible discrimination.'" *Smith v. Bray*, 681 F.3d 888, 896 (7th Cir. 2012) *overruled on other grounds by Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016) (quoting *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003)).

In order to prove a retaliation claim on the basis of failure to hire, the plaintiff must show (1) that he engaged in a statutorily protected activity, (2) that he suffered an adverse action, and (3) that there is a causal link between the two. *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016). The central question is whether the record contains sufficient evidence to conclude that the retaliatory motive caused the discharge. *Id.* at 563 (citing *Ortiz*, 834 F.3d at 765). A plaintiff alleging that the employer's failure to hire him was due to retaliation must show that he: "(1) ... engaged in a statutorily protected activity; (2) ... applied and had the technical qualifications required for the ... position; (3) ... was not hired for the position; and (4) a similarly situated individual who did not [engage in statutorily protected activity] was hired for the position." *Volling v. Kurtz Paramedic Servs., Inc.*, 840 F.3d 378, 383 (7th Cir. 2016) (quoting *Cichon v. Exelon Generation Co., LLC*, 401 F.3d 803, 812 (7th Cir. 2005)).

### b. Analysis

Oliver's EEOC charge of racial discrimination is statutorily protected activity. To meet the remainder of his prima facie burden, Oliver must show that an adverse employment action taken by JLMI was causally related to Oliver's filing of the charge.

Oliver cannot establish that he experienced an adverse action of the type that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Shott v. Katz*, 829 F.3d 494, 497 (7th Cir. 2016). The temporary positions were posted. Temp. Mechanic Listing, ECF No. 30-6. Oliver never applied for the temporary positions, or otherwise advised JLMI of his interest, and therefore cannot establish a prima facie case on the basis of rejection.

14

*Volling*, 840 F.3d at 383. Though Oliver felt that he should have had priority consideration for the temporary positions, the CBA did not require that JLMI recall laid off employees to fill them. CBA 7.4(a) (providing that temporary vacancy "may be filled at the Company's discretion without regard to seniority or bargaining unit restrictions"). The same is true for the full-time mechanic position: Oliver did not apply to fill it, and regardless, JLMI did not have reason to believe that Oliver was qualified to fill it. *Id.; see* CBA 7.4(b) (once it deemed him unqualified, JLMI had no duty to recall him to the position: "All regular, full-time bargaining unit positions will first be filled by recalling *qualified* employees on layoff . . .") (emphasis added). No reasonable factfinder could conclude that failing to recall an unqualified employee, to a position for which he never applied and had no right to, would dissuade a reasonable worker from opposing impermissible discrimination.

Because Oliver did not apply for the later mechanic positions and, regardless, had already been deemed unqualified because of his initial application, he has not presented sufficient evidence for a finder of fact to conclude that he was retaliated against because he exercised his statutorily protected right to file a claim of race discrimination with the EEOC.

## CONCLUSION

Defendant's Motion for Summary Judgment, ECF No. 28, is GRANTED. Defendant's Motion for Hearing, ECF No. 29, is DENIED. The Clerk is directed to enter judgment and close the case.

Entered February 24, 2017.

s/ Sara Darrow

SARA DARROW
UNITED STATES DISTRICT JUDGE